**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Susan Alexis KOMISARUK,
Defendant–Appellant.**

No. 88–5021.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided May 10, 1989.

As Amended Sept. 5, 1989.

Daniel R. Williams, Orrick, Herrington & Sutcliffe, San Francisco, Cal. and Benjamin D. Gibson, Mayer, Brown & Platt, Chicago, Ill., for defendant-appellant, Susan Alexis Komisaruk.

Nora M. Manella, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee, the U.S.

Before FLETCHER, ALARCON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Susan A. Komisaruk appeals from the judgment of conviction for willfully damaging government property in an amount exceeding $100.00 in violation of 18 U.S.C. § 1361. Komisaruk intentionally vandalized an Air Force computer which was assigned to the United States space shuttle program. The estimated cost of repairs for the computer equipment, including labor, exceeded $700,000.00. On June 3, 1987, Komisaruk held a press conference and announced publicly that she had destroyed the ground control center for the Navstar military navigational system. Komisaruk was arrested following the press conference. Komisaruk was found guilty after a jury trial. She was sentenced to serve a term of imprisonment for five years and ordered to pay restitution in the amount of $500,000.00.

Komisaruk seeks reversal on the following grounds:

One. The district court erred in issuing an *in limine* order precluding Komisaruk from introducing evidence of international law, the law of necessity and crime prevention, to raise a reasonable doubt that she possessed the requisite intent for a violation of § 1361.

Two. The district court erred in precluding her from presenting evidence that her motive in destroying the computer components was based on her understanding of the requirements of international law.

Three. The district court erred in precluding her from attempting to negate the government's evidence that the computer components were the property of the United States as that term is used in Section 1361.

Four. The district court erred in refusing to instruct the jury on the lesser included offense of trespass.

## I. STANDARD OF REVIEW

An *in limine* order precluding the admission of evidence or testimony is an evidentiary ruling. *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). We review evidentiary rulings for abuse of discretion. *Id.* at 1481.

## II. DISCUSSION

### A. Evidence of Komisaruk's Mental State

Komisaruk contends that she was denied the right to offer evidence to raise a reasonable doubt that she possessed the necessary mental state to sustain a conviction for a violation of section 1361.

At a pre-trial hearing, the court granted the government's motion *in limine* and prohibited Komisaruk from introducing her political, religious, or moral beliefs as evidence (1) to support defenses of necessity and crime prevention, (2) to negate the requisite elements of the corpus delicti concerning intent and ownership of the property by the United States, (3) to explain her admission of guilt in the redacted press release, and (4) to prove the morality or immorality of national defense policies. The district court concluded that Komisaruk's personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime. During trial, the district court rejected Komisaruk's attempt to introduce the same evidence to prove her motive in destroying the Air Force's computer.

Komisaruk advanced various theories in an attempt to persuade the trial court that she should be allowed to introduce evidence of her subjective beliefs concerning her responsibility under international law to destroy the Navstar navigational system. First, she attempted to introduce evidence of her anti-nuclear war views to rebut motive evidence allegedly offered by the government. Second, she contended that she should be entitled to establish that under international law the Navstar navigational system was illegal and therefore she did not intend to injure property lawfully owned by the United States. Third, she advised the court that she was prepared to present expert witnesses and to introduce Air Force documents in support of her belief that the Navstar navigational system was illegal under principles of international law to negate the intent element of section 1361. Fourth, Komisaruk argued that she had a right to cross-examine government witnesses to bring into evidence the words she had written on the walls of the building in which the computer was located, after the witnesses had testified about her graffiti without reference to the actual words she had written. Fifth, she attempted to introduce the statements she had made about international law to explain the admissions contained in the redacted press release.

We discuss each of the mental state arguments under separate headings.

### 1. Motive

■ Komisaruk argued that the *in limine* order precluded her from presenting

testimony of her motive in dismantling the computer system to negate the government's evidence regarding her intent. She argues that "the prosecution introduced its own speculations as to Ms. Komisaruk's motives from which it hoped to have the jury infer the requisite specific intent and view Ms. Komisaruk in a negative light." The record does not support this assertion.

The government introduced evidence that Komisaruk made statements at the press conference that as a result of her conduct she had been "noticed," that she "expected to get arrested," and that she wanted "to damage everything in sight." Komisaruk did not deny that she made these statements. She argued, however, that the jury could draw adverse inferences from these statements concerning her character and motive for "self-aggrandizement" and "self-punishment."

Komisaruk was not denied the opportunity to rebut these inferences. The district court informed counsel that the *in limine* order would not be violated if the defense called Komisaruk's father to testify to the absence of character traits for self-aggrandizement or self-punishment. For reasons not reflected in the record, Mr. Komisaruk was not called as a witness.

The Supreme Court has instructed that "*[w]ithin limits,* the [district] judge may control the scope of rebuttal testimony ...[and] may refuse to allow cumulative, repetitive, or irrelevant testimony." *Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976) (emphasis added).

Komisaruk's statements at her press conference concerning international law were not relevant to any issue in the case. Komisaruk was given the opportunity to rebut the unfavorable inferences that could be drawn from her statements with relevant evidence. Therefore, the *in limine* order properly precluded the irrelevant statements made at the press conference concerning international law to negate intent.

2. *Komisaruk's View of the Property Status of the Computer*

██ Komisaruk claimed that evidence of her belief, as informed by international law, that the computer was not property would provide a basis for negating the specific intent necessary to violate § 1361. Komisaruk complains that she was entitled to present evidence of her views on international law, notwithstanding the court's conclusion that this notion was "far-fetched." Komisaruk argues that every factual theory presented by the defendant must be submitted to the jury regardless of whether the trial court believes it is incredible or silly. Komisaruk clearly misstates the law. A district court may limit evidence to proof that is legally relevant. Fed.R.Evid. 402; *United States v. Gomez,* 846 F.2d 557, 560 (9th Cir.1988). We have held that evidence may be excluded following an *in limine* hearing if the evidence described in the defendant's offer of proof is insufficient as a matter of law to establish a defense. *United States v. Dorrell,* 758 F.2d 427, 430 (9th Cir.1985); *United States v. Cottier,* 759 F.2d 760, 763 (9th Cir.1985).

In support of her argument, Komisaruk mistakenly relied upon the Supreme Court's decision in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In *Morissette,* the district court ruled that the crime of converting government property (18 U.S.C. § 641) required no criminal intent, that a claim of ignorance that the property was owned by the government was no defense, and that the jury was allowed to presume the defendant possessed the requisite intent. The Supreme Court reversed and held that the statute was not intended to apply to "unwitting, inadvertent, and unintended conversions" of government property. *Id.* at 270, 72 S.Ct. at 254. The Supreme Court ruled that Morissette was entitled to have the jury determine whether he had the requisite intent to violate the statute or whether he was unaware that the government owned the property because he mistakenly believed it had been abandoned.

Unlike the circumstances in *Morissette,* the district court presented the issue of intent to the jury in the instant matter. Furthermore, Komisaruk admitted destroying the Air Force computer system precise-

ly because she believed it was a United States military operation used for the national defense system. Komisaruk did not claim ignorance of the government's proprietary claim over the computer. Instead, she admitted breaking into an Air Force building for the specific purpose of destroying a navigational system she believed was possessed and controlled by the United States military for a purpose she opposes.

The Tenth Circuit affirmed the exclusion of evidence challenging title to Forest Service lands in a case where the defendant was charged with destruction of Forest Service signs. *United States v. Tijerina,* 446 F.2d 675, 681 (10th Cir.1971). Tijerina also tried to invoke his reliance on foreign law which he believed superseded federal law. *Id.* at 679. He claimed that the removal was not unlawful because the property was part of a Spanish land grant. He believed that, under the Spanish land grant, ownership had transferred to the heirs of the grantees. *Id.* Similarly, we affirm the district court's order rejecting Komisaruk's evidence that was irrelevant to her intent to damage government property.

### 3. *Mistake of Law*

Komisaruk claims that her "mistake of law" regarding the legal status of the computer as government property negates the proof of the requisite intent to damage government property.

Komisaruk's reliance upon *United States v. Golitschek,* 808 F.2d 195 (2nd Cir.1986) and *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) for this proposition is misguided. In *Golitschek,* the Second Circuit overruled the lower court's instruction that everyone is presumed to know what the law forbids. 808 F.2d at 202. In the instant case, the trial court did not present a presumption instruction to the jury. Instead, the trial court instructed the jury that it must find that Komisaruk possessed the requisite intent before the jury could find her guilty.

*Liparota* does not further Komisaruk's argument. In *Liparota,* the applicable statute required the government to prove the defendant knowingly acquired food stamps in a manner not authorized by law. *Liparota,* 471 U.S. at 433, 105 S.Ct. at 2092. In the present case, section 1361 does not place upon the government the burden to prove that the defendant had a subjective belief that the property was being used for a lawful purpose under international law.

Finally, Komisaruk's argument is unpersuasive in light of her testimony that she was aware that federal law prohibits the intentional destruction of government property. Komisaruk also conceded that the laws protecting federal military property applied to her.

■ Komisaruk reformulated this argument by claiming a right to show that her mistaken beliefs were reasonable. Komisaruk attempted to verify the reasonableness of her beliefs by introducing experts who are knowledgeable about the Navstar system. The trial court properly denied her request.

We have held that expert testimony cannot be offered to buttress credibility. *United States v. Brodie,* 858 F.2d 492, 496 (9th Cir.1988) (citing *United States v. Binder,* 769 F.2d 595, 602 (9th Cir.1985)). In *United States v. Eberhardt,* 417 F.2d 1009 (4th Cir.1969), *cert. denied,* 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970), the Fourth Circuit upheld the trial court's refusal to permit expert testimony regarding the reasonableness of the defendant's beliefs that the Vietnam War was illegal. *Id.* at 1012.

■ Komisaruk further attempted to prove the reasonableness of her beliefs by requesting the court to order the Air Force, the Navy, and the Strategic Air Command to produce documents concerning the intended use and capabilities of the Navstar system. The district court did not err in denying this request.

■ Federal Rule of Criminal Procedure 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a subpoena *duces tecum. United States v. Reed,* 726 F.2d 570, 577 (9th Cir.), *cert. denied,* 469 U.S. 871, 105

S.Ct. 221, 83 L.Ed.2d 151 (1984). A court is justified in quashing a subpoena *duces tecum* if production would be immaterial, unreasonable, oppressive and irrelevant. *Id.* at 577.

The documents sought by Komisaruk were irrelevant. Komisaruk destroyed a space shuttle computer instead of the Navstar navigational system. Therefore, documentary evidence relating to the Navstar navigational system was irrelevant and the district court did not abuse its discretion in denying a request to produce those documents. *Id.*

### 4. *Limitation of Cross–Examination on Motive*

■ Komisaruk asserts that the district court erred in restricting her right to cross-examine prosecution witnesses. These witnesses testified concerning the extent of damages, the cost of repairs, and the fact that the walls contained graffiti. Her request to question the witnesses about the words written on the walls was denied. Komisaruk argues that evidence of her reliance on international law to explain the massive damage to the computer components would have dissuaded the jury from drawing an unfavorable inference.

We have held that a defendant does not possess an unlimited right to "cross-examination that is effective in whatever way, and to whatever extent, [she] might wish." *Evans v. Lewis,* 855 F.2d 631, 634 (9th Cir.1988) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)). The trial court may properly exclude evidence on cross-examination " 'that is repetitive or only marginally relevant'." *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)). The words used by Komisaruk in defacing the building were not relevant to any issue in the case. The district court did not abuse its discretion in limiting the cross-examination of these witnesses.

■ Komisaruk claims that she had a constitutional right to present her views concerning international law to the jury to explain her motive for committing such massive destruction. Komisaruk relies upon *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), in support of this contention. In *Washington,* the Supreme Court addressed the Sixth Amendment right to establish an available defense. *Id.* at 19, 87 S.Ct. at 1923. Here, the trial court properly ruled that Komisaruk failed to make a proper showing for the presentation of an affirmative or negative defense based upon international law. Komisaruk's claim that she has an absolute Sixth Amendment right to proffer her theory of defense to the jury notwithstanding the fact that it is inadmissible under the law of this circuit is unpersuasive. Evidence not relevant to an available defense is inadmissible. *See* Fed.R.Evid. 402; *Dorrell,* 758 F.2d at 430; *United States v. Seward,* 687 F.2d 1270, 1278 (10th Cir. 1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983).

### 5. *Redacted Portions of Her Press Release*

Komisaruk seeks reversal on the ground that she was precluded by the court's *in limine* ruling from presenting evidence disclosing the redacted portions of her press release. On June 3, 1987, Komisaruk held a press conference to announce publicly that she had destroyed the ground control center of the Navstar system. At the press conference Komisaruk distributed a press release. The redacted statement reads as follows:

> FOR IMMEDIATE RELEASE June 3, 1987
>
> Katya Komisaruk will give herself up to law enforcement authorities at the San Francisco Federal Building today at 2 p.m., following a noon press conference.
>
> Komisaruk destroyed the ground control center for the Navstar military navigation system at Vandenberg Air Force Base early Tuesday morning.
>
> Komisaruk spent two hours in the control center, using a crowbar, boltcutters, hammer and cordless drill to wreck the equipment she found there. She spray painted the outside of the installation. The building was unattended at the time,

and at no time did anyone interrupt her work. She then walked to the main gate of the base and hitchhiked to San Francisco.

■ Our decision in *Dorrell* disposes of this issue. In *Dorrell*, the district court granted the government's motion *in limine* to redact the portions of a written confession concerning Dorrell's political motivations on relevancy grounds. *Dorrell*, 758 F.2d at 434–35. We affirmed. We held that the edited version of Dorrell's confession neither distorted the meaning of the statement nor excluded exculpatory facts. We explained our ruling as follows:

> In this case, removing Dorrell's explanation of the political and religious motivations for his actions did not change the meaning of the portions of his confession submitted to the jury. The redaction did not alter the fact that he admitted committing the acts with which he was charged. Further, because the defense of necessity was unavailable, Dorrell's motivation did not excuse the crimes he committed. The omitted portions of his confession were therefore not exculpatory.

*Id.* at 435.

In the present case, the government redacted statements made by Komisaruk regarding her subjective political motivations for vandalizing an Air Force computer. Komisaruk's dissertation on her motives for destroying the computer did not alter the meaning of her admission that she damaged property belonging to the United States. Her explanation was neither legally exculpatory nor relevant.

Komisaruk relies on *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), to support her contention that certain portions of the press release were improperly withheld from the jury. In *Crane*, the defendant's defense was that his admissions were "not to be believed" because of the stressful circumstances under which he confessed. *Id.* at 691, 106 S.Ct. at 2147.

Komisaruk's reliance on *Crane* is misplaced. Komisaruk does not argue that the redacted press release inaccurately presents her words. Instead, she seeks to introduce statements she made at the press conference which she orchestrated to draw attention to her idiosyncratic opinions. Her statements contained defenses not cognizable in this circuit. In this matter, the truthfulness of Komisaruk's confession and the circumstances under which she confessed are not disputed. Komisaruk called the conference and prepared the press release. No government official was involved in the drafting of the press release or in interrogating her at the press conference. She has never claimed that she made false statements in the press release.

### B. Property

Komisaruk contends that the court erred in ruling *in limine* that she could not present evidence of international law to negate the government's evidence that the property she destroyed legally belonged to the United States. We disagree.

■ First, proof under international law regarding the legality of the Navstar system would have been irrelevant because on June 2, 1987, the destroyed computer was assigned to the space shuttle program. The evidence shows the Navstar system had been relocated to Colorado one and one-half years prior to her acts of vandalism.

■ Second, the uncontroverted evidence showed that the computer system was property as that term is used in section 1361. The Supreme Court has held that "[c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." *United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985).

"Property" is commonly defined as "something that is or may be owned or possessed: ... the exclusive right to possess, enjoy, and dispose of a thing: ... OWNERSHIP." G. & C. Merriam Co., *Websters Third New International Dictionary*, unabridged, 1818 (1976).

Under the common meaning of the word "property", the government had the exclu-

sive right to possess or dispose of the computer which Komisaruk demolished. The evidence shows the Air Force purchased the computer components from IBM in 1983. The Air Force remained the legal owner of the computer at the time it was demolished by Komisaruk.

Moreover, the plain meaning of the word "property" as used by Congress in section 1361 is not affected by the strictures of international law. In *United States v. Allen,* 760 F.2d 447 (2nd Cir.1985), the court stated " 'in enacting statutes, Congress is not bound by international law.' " *Id.* at 454 (citation omitted). In *Allen,* nuclear protesters damaged a B–52 bomber. The appellants' argument was that they were entitled to defend their acts "on the theory that the damaged weapons systems were developed and deployed in violation of international law, which therefore obligated them to take steps to prevent that violation." *Id.* at 449. This is precisely Komisaruk's theory of defense in this matter. The *Allen* court rejected this notion in the following statement: "We do not suggest that the deployment of nuclear armament systems does violate international law, but merely that Congress has the power to protect government property by statute." *Id.* at 454.

Komisaruk contended that the illegality of the Navstar system under principles of international law stripped the computer of its status as property of the United States. The district court properly rejected this fanciful argument.

### C. The Lesser Included Offense

Komisaruk requested the court to instruct the jury on the offense of entering military property for any purpose prohibited by law in violation of 18 U.S.C. § 1382, as a lesser included offense. She claims that the offense of entering military property for any purpose is a lesser included offense to the crime of destruction of government property under 18 U.S.C. § 1361. The district court refused to instruct the jury on the lesser included offense on the ground that 18 U.S.C. § 1382 is not a lesser included offense to 18 U.S.C.

§ 1361 because a person could destroy government property without going upon government land. Komisaruk argues that this ruling was erroneous and warrants reversal because the district court used a "mechanistic approach" to determine whether a lesser included offense instruction was proper.

A defendant "may be found guilty of an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c) (1982). "[B]ecause it requires us to consider primarily legal concepts and 'to exercise judgment about the values that animate legal principles,' we review the district court's decision regarding [Rule 31(c)] *de novo.*" *United States v. Brown,* 761 F.2d 1272, 1278 (9th Cir.1985) (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (*en banc*), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

This court's interpretation of Fed.R. Crim.P. 31(c) has required the application of the "inherent relationship" test wherein "(1) a lesser included offense must be identified, and (2) a rational trier of fact must be able to find the defendant guilty of the included offense but innocent of the greater offense." *United States v. Martin,* 783 F.2d 1449, 1451 (9th Cir.1986) (citation omitted).

After this matter was submitted, following oral argument, the Supreme Court, in *Schmuck v. United States,* — U.S. —, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), rejected this test because "the inherent relationship approach, in practice, would require that Rule 31(c) be applied in a manner inconsistent with its language." *Id.* at 1451. The Court reasoned that "[w]ere the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, [the] right to notice would be placed in jeopardy." *Id.* The Supreme Court therefore overruled the "inherent relationship" test and held that the elements test, where "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense," must be applied instead. *Id.* at 1450. The Court stated that:

The elements test, in contrast [to the inherent relationship test], permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge. This approach preserves the mutuality implicit in the language of Rule 31(c).

*Id.* at 1451.

■ Applying the "elements" analysis to the present matter, we conclude that the district court was correct in its assessment that the crime of entering military property for any purpose prohibited by law is not a lesser included offense to the charge of destruction of government property. To prove a violation of 18 U.S.C. § 1361, the government must present evidence establishing willful injury to government property. The offense *entering military property for any purpose* proscribed in section 1382 requires proof that the accused entered United States military property for any purpose prohibited by law. 18 U.S.C. § 1382. The requirement that military property be entered is not a subset of the elements of the crime of destruction of government property. The district court did not err in refusing to give a jury instruction on trespass.

### III. CONCLUSION

The government produced uncontradicted evidence that Komisaruk wilfully destroyed computer components which were owned by the United States government. The record shows that Komisaruk orchestrated a carefully planned scheme to destroy government property and to manufacture and publicize her defenses prior to her arrest. She admitted knowledge of federal laws prohibiting her conduct and acknowledged that laws designed to protect federal military property applied to her.

Although the *in limine* order was unambiguous, Komisaruk repeatedly violated the order by volunteering evidence she knew was inadmissible during her direct examination. Again, in closing argument, she violated the court's admonitions and

presented her theory that she acted in accordance with higher law.

The trial court did not abuse its discretion or misapply the law in granting the motion *in limine*, rejecting irrelevant rebuttal evidence and in denying the instruction on the lesser included offense of trespass. The judgment is AFFIRMED.